The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Morgan S. Chapman and the briefs and oral argument son appeal. On their appeal, defendants have failed to show good ground to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. On his appeal, plaintiff has shown good ground to reconsider the evidence. Upon reconsideration of the evidence, the Full Commission modifies and affirms the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
***********
The Full Commission finds as a fact and concludes as a matter of law the following, which was entered into by the parties at the hearing on July 22, 1996 as:
STIPULATION
1. The issue for determination is whether plaintiff is entitled to benefits beginning January 12, 1995.
2. Additionally, the parties stipulated into evidence an indexed packet of medical records and reports.
***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. As of December 1989 plaintiff had been employed by defendant-employer for 6 months as a grocery selector, a job which involved using a motor tugger to pull carts down aisles in a large warehouse and putting wholesale grocery items into the cart according an order sheet. On December 27, 1989 he sustained a compensable injury by accident when another employee's cart knocked a railing towards him and he threw up his arms to protect his face. The rail struck his left elbow, his right wrist and his right leg. He was seen in the emergency room the following day for pain and swelling in his elbow but he apparently did not receive further medical treatment for a year.
2. During the year following his injury, plaintiff continued working at his regular job. However, he began to develop progressive weakness and numbness in his left hand. On February 20, 1991 he went to Dr. Classen, an orthopedic surgeon, who diagnosed his condition as ulnar nerve entrapment at the left elbow. It was Dr. Classen's opinion that scar tissue had developed as a result of his injury at work to cause the condition. Dr. Classen performed surgery on December 28, 1991 to transfer the nerve at the elbow. Plaintiff then underwent a prolonged convalescent period during which he made several attempts to return to work with the result that he developed recurrent symptoms.
3. In August 1991 plaintiff was evaluated by Dr. Levin at Duke Medical Center regarding his persistent symptoms. Dr. Levin advised plaintiff to change jobs and told him that he should not be doing heavy lifting at work. No further surgery was recommended. Plaintiff then returned to Dr. Classen whenever he had a flare-up of pain and Dr. Classen provided treatment with medication and injections.
4. Plaintiff could not remember the times he worked and the times he was out of work, but defendants admitted liability for workers' compensation benefits for his left elbow condition pursuant to Form 21 and 26 agreements approved by the Industrial Commission and apparently paid compensation to him for the periods he was out of work until he was given a new job as a shipping clerk. His new job involved getting the mail, handling invoices, manifests and other documents, and notifying shipping that a load was ready to go. The job was basically a desk job but he was also apparently required to pull down garage doors.
5. In January 1995 plaintiff was having increased symptoms in his left elbow and he so advised his supervisor. Due to an unexplained mix-up, he thought that he scheduled an appointment with Dr. Classen for Wednesday January 11, 1995 which was one of his days off, but when he arrived at the doctor's office no appointment had been set and Dr. Classen was not there that day. No other doctor in the office could see him on that occasion, so he was given an appointment for the end of the month.
6. Plaintiff understood from previous experiences with flare-ups that if his arm was bothering him, he was to return to the doctor and that his absence was excused since it stemmed from an injury at work. Consequently, he did not report for work the next two days. He was going to return to work on Sunday night, but he went to the work place earlier that afternoon to visit with friends and was advised that his employment had been terminated. Consequently, he went back home. The next day he called his supervisor who confirmed that he had, in fact, been fired.
7. It was February 2, 1995 before plaintiff could see Dr. Classen. At that time, Dr. Classen continued the previous restrictions that plaintiff was not to perform any heavy or repetitive work.
8. After his termination by defendant-employer, plaintiff found work at Cates Pickle Company, but he was unable to work there long because the work duties exceeded his limitations. He then found a job at an automotive repair shop where he performed tasks such as changing tires. After working at the service center for eight to ten months, his arm went out as he was handling a tire under circumstances where another employee could have potentially gotten hurt. Consequently, he left that employment. He next worked for Carolina Turkey where he soon hurt his back, so he was terminated. As of the date of hearing, he was working for Quinn Farms where he cut grass, cleaned chicken houses and cared for cattle. However, he would apparently bump his elbow on occasion due to the nature of his work duties, and, when Dr. Classen examined him on July 30, 1996, the doctor recommended that he find another job.
9. Since August 1991 plaintiff has been unable to perform his former job duties as a grocery selector for defendant-employer as a result of his compensable injury to his left elbow. He has been restricted to work involving no heavy lifting or repetitive use of his elbow. During the months prior to January 1995, defendant-employer was providing suitable work for plaintiff which was within his limitations. Apparently he was able to earn wages in the new job equal to his former average weekly wage of $318.00.
10. Defendants have contended that plaintiff was fired on January 16, 1995 for misconduct since he did not report for work or call in to the office for three consecutive work days. However, the work rules were very confusing at that time. The company had changed hands twice since plaintiff was hurt. The last company, Scrivner, apparently had two different sets of rules, one of which applied to a bonus program. Because of the conflicting provisions of the rules, it would be very easy for an employee to become confused regarding what was acceptable with respect to time lost for an injury at work. Plaintiff acted consistently with what had been allowed on previous occasions. Under the circumstances, his actions in January 1995 did not arise to the level of misconduct for which an employee should have been terminated.
11. Defendant-employer did not provide suitable work for plaintiff after January 14, 1995 and he was not able to perform his light duty job from January 12 through 14, 1995 as a result of a flare-up of his left arm condition.
12. After January 15, 1995 plaintiff was unable to earn wages equal to his former average weekly wage of $318.00 due to the limitations resulting from his injury at work. However, he had earning capacity during that time and his actual earnings thereafter reflected his wage earning capacity, but there was insufficient evidence of record to determine the specific earnings during definite periods of time. Nevertheless, his partial incapacity to work and earn wages continued until the date of hearing.
13. Plaintiff's average weekly wage on January 15, 1995 was $318.00, yielding a compensation rate of $212.11.
***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff's average weekly wage on January 15, 1995 was $318.00, yielding a compensation rate of $212.11. G.S. § 97-2(5).
2. Plaintiff's termination on January 16, 1995 was not for actions which would amount to misconduct for which an employee should have been terminated.
G.S. § 97-2-(6).
3. As the result of his injury by accident, plaintiff is entitled to have defendants pay him temporary total disability compensation for the periods in which he was incapable of earning any wages, and in the amount of $212.11 per week beginning on January 12, 1995 and continuing through the present and until further order of the Commission. G.S. § 97-29.
4. As the result of his injury by accident, plaintiff is entitled to have defendants pay him temporary partial disability compensation for any days on which he was able to work at reduced wages, and at the rate of two-thirds of the difference between his average weekly wage on January 15, 1995 of $318.00 and the wages he was able to earn thereafter. G.S. § 97-30.
5. Plaintiff is entitled to have defendants provide all medical treatment arising from this injury by accident to the extent it tended to effect a cure, give relief or lessen his disability. G.S. § 97-25.
*********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission modifies and affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at the rate of $212.11 per week for the periods in which he was incapable of earning any wages, beginning on January 12, 1995 and continuing through the present and until further order of the Commission. The amount of compensation having accrued shall be paid to plaintiff in a lump sum. This compensation is subject to a credit for defendants for the periods for which plaintiff is entitled to temporary partial disability, and the attorney's fee approved herein.
2. Defendants shall pay temporary partial disability compensation to plaintiff partial disability compensation for any days on which he was able to work at reduced wages, and at the rate of two-thirds of the difference between his average weekly wage on January 15, 1995 of $318.00 and the wages he was able to earn thereafter. The amount of compensation having accrued shall be paid to plaintiff in a lump sum and is subject to the attorney's fee approved herein.
3. Defendants shall pay all medical expenses incurred by plaintiff as a result of this injury by accident.
4. An attorney's fee in the amount of twenty-five percent of the compensation awarded is hereby approved for plaintiff's counsel. From the accrued compensation, this fee shall be deducted from the amounts owed to plaintiff and paid directly to counsel for plaintiff, with counsel for plaintiff receiving every fourth check payable to plaintiff thereafter.
5. Defendants shall pay the costs.
 S/ ______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________ THOMAS J. BOLCH COMMISSIONER
S/ ______________ DIANNE C. SELLERS COMMISSIONER